Darrell Cafasso
dcafasso@orrick.com
Marc R. Shapiro (*Pro Hac Vice Pending*)
mrshapiro@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Tel:  212.506.5000
Fax:  212.506.5151

Natalie Nahabet (*Pro Hac Vice Pending*)
nnahabet@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel:  213.629.2020
Fax: 213.612.2499
*Attorney for Defendant*
*Microsoft Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS DEUTSCH,<br><br>Petitioner,<br><br>v.<br><br>MICROSOFT CORPORATION<br><br>Respondent. | Civil Action No. 3:22-cv-02904-FLW-RLS<br><br>**MICROSOFT CORPORATION'S OPPOSITION TO PETITIONER'S MOTION TO VACATE ARBITRATION ORDERS** |

**CONDITIONALLY FILED UNDER SEAL**

**CONFIDENTIAL MATERIALS**

# **TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ..................................................................... 1

II.  STATEMENT OF FACTS ......................................................................... 3

    A.  Microsoft's Code of Conduct, and Microsoft's Detection of CSEAI in and Blocking of Petitioner's Account. ................................. 3

    B.  Procedural Background ............................................................. 6

    C.  The Arbitration Rulings ...........................................................10

    D.  Petitioner's Motion to Vacate the Arbitration Award .......................11

III.  LEGAL STANDARD ...............................................................................12

IV.  NO GROUNDS EXIST FOR VACATING THE ARBITRATION AWARD ..................................................................................................14

    A.  Petitioner's Failure to Serve Microsoft Warrants Dismissal of the Motion to Vacate ...................................................................14

    B.  The Arbitrator's Orders Were Consistent with Clearly Established Law (Section I.A.) ................................................................17

        1.  Judge Derman Applied the Proper Section 230 Standard. .......17

        2.  Judge Derman Properly Denied Petitioner's Motion to Compel Disclosure of CSEAI Material. ..............................21

        3.  Judge Derman's Section 230 Order Was Proper ....................22

    C.  The Arbitrator Properly Dismissed Petitioner's Consumer Protection Claim (Section I.B.). ...............................................................26

    D.  The Arbitrator Addressed Petitioner's Claims, Which Are Meritless In Any Event (Section I.C.). .....................................................27

    E.  The Arbitrator Did Not Exceed Her Powers As Regards Dispositive Briefing (Section II). ...............................................................29

V.  CONCLUSION .......................................................................................31

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABS Brokerage Servs., LLC v. Penson Fin. Servs., Inc.*,
2010 WL 2723173 (D.N.J. July 8, 2010) ........................................................13

*Bapu Corp. v. Choice Hotels Int'l, Inc.*,
371 F. App'x 306 (3d Cir. 2010) ....................................................................30

*Brentwood Med. Assocs. v. United Mine Workers of Am.*,
396 F.3d 237 (3d Cir. 2005) ......................................................................12, 13

*Caputo v. Wells Fargo Advisors, LLC*,
2020 WL 2786934 (D.N.J. May 29, 2020) (C. J. Wolfson) ................. 13, 19, 27

*Caputo v. Wells Fargo Advisors, LLC*,
2022 WL 1449176 (3d Cir. May 9, 2022) ......................................................18

*Cigna Ins. Co. v. Huddleston*,
986 F.2d 1418, 1993 WL 58742 (5th Cir. 1993) ............................................16

*Dalla-Longa v. Magnetar Capital LLC*,
-- F.4th --, 2022 WL 1493463 (2d Cir. May 12, 2022) ....................................16

*Dennis v. MyLife.Com, Inc*.,
2021 WL 6049830 (D.N.J. Dec. 20, 2021) ......................................................26

*e-Ventures Worldwide, LLC v. Google, Inc*.,
188 F. Supp. 3d 1265 (M.D. Fl. 2016) ............................................................19

*Exxon Shipping Co. v. Exxon Seamen's Union*,
73 F.3d 1287 (3d Cir. 1996) ...........................................................................25

*Green v. Nevers*,
1993 WL 1620511 (E.D. Mich. April 13, 1993).............................................24

*Hall Street Assoc. LLC v. Mattel, Inc.*,
552 U.S. 576 (2008).........................................................................................18

*Holomaxx Techs. v. Yahoo!, Inc*.,
2011 WL 3740827 (N.D. Cal. Aug. 23, 2011) ................................................19

*Huertas v. Foulke Mgmt. Corp.*,
  2021 WL 1138149 (D.N.J. Mar. 25, 2021), *aff'd*, 2021 WL
  5984696 (3d Cir. Dec. 17, 2021).......................................................................13

*Jock v. Sterling Jewelers, Inc.*,
  646 F.3d 113 (2d Cir. 2011)...............................................................................25

*NetChoice, LLC v. Moody*,
  546 F. Supp. 3d 1082 (N.D. Fla. June 30, 2021) ..............................................21

*O'Neal Constructors, LLC v. DRT Am., LLC*,
  440 F. Supp. 3d 1396 (N.D. Ga. 2020), *aff'd in part, appeal
  dismissed in part*, 991 F.3d 1376 (11th Cir. 2021) ...........................................15

*Ogbebor v. J.P. Morgan Chase, N.A.*,
  2017 WL 449596 (D.N.J. Feb. 2, 2017) (Wolfson, J.).......................................17

*Panniel v. Diaz*,
  376 N.J. Super. 597 (Law Div. 2004).................................................................28

*In re Patwari*,
  2016 WL 1577842 (Bankr. D.N.J. Apr. 7, 2016) ..............................................16

*Richardson v. Babiskin*,
  2020 WL 13157448 (D.N.J. Mar. 24, 2020), *aff'd*, 2022 WL
  964199 (3d Cir. Mar. 30, 2022).....................................................................2, 16

*Roberts & Schaefer Co. v. Local 1846, UMW*,
  812 F.2d 883 (3d Cir. 1987)...............................................................................25

*Doe ex rel. Roe v. Backpage.com, LLC*,
  104 F. Supp. 3d 149 (D. Mass. 2015), *aff'd sub nom. Jane Doe No.
  1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016)......................................26

*Sean Wood, LLC. v. Hegarty Group, Inc.*,
  422 N.J. Super. 500 (App. Div. 2011)................................................................28

*Sherrock Bros. v. DaimlerChrysler Motors Co., LLC*,
  260 F. App'x 497 (3d Cir. 2008) ........................................................................30

*Siegmeister v. Benford*,
  2017 WL 2399573 (D.N.J. June 1, 2017)...........................................................15

*Simons v. Brown*,
  444 F. Supp. 3d 642 (E.D. Pa. 2020), *aff'd*, 2022 WL 296636 (3d
  Cir. Feb. 1, 2022) ..................................................................................30

*Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*,
  2011 WL 900096 (D.N.J. Mar. 15, 2011) .......................................20

*United Transp. Union Local 1589 v. Suburban Transit Corp.*,
  51 F.3d 376 (3d Cir. 1995) .............................................................3

*Wallace v. Buttar*,
  378 F.3d 182 (2d Cir. 2004) ...........................................................24

*Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
  455 F. Supp. 2d 545 (N.D. Tex. 2006) ...........................................17

*Weber v. PNC Invs.*,
  844 F. App'x 579 (3d Cir. 2021) .....................................................30

*Whitehead v. Pullman Grp., LLC*,
  811 F.3d 116 (3d Cir. 2016) ............................................................18

*Word of God Fellowship, Inc. v. Vimeo, Inc.*,
  205 A.D.3d 23 (N.Y. 2022) .......................................................22, 25

*Wulfe v. Valero Refining Co.-Cal.*,
  687 Fed. Appx. 646 (9th Cir. 2017) ................................................25

## Statutes

9 U.S.C. § 10(a) ...................................................................................18

9 U.S.C. § 10(a)(1-4) ...........................................................................14

9 U.S.C. § 12 ...............................................................................2, 14, 15

18 U.S.C. § 2258A(a) ............................................................................4

47 U.S.C. § 230(c)(2)(A) ...............................................................*passim*

47 U.S.C. § 230(c)(2) ...........................................................2, 24, 25, 27

**Other Authorities**

Fed. R. Civ. P. 5.....................................................................................................15

Local Rule 5.1(a) ...............................................................................................15

Local Rule 7.1.(e) ..............................................................................................23

Microsoft respectfully submits this memorandum in opposition to the petition of Thomas Deutsch ("Petitioner") to vacate arbitration orders.  For the reasons stated below, Petitioner does not satisfy the heavy burden necessary to vacate an arbitration award, and the Court should deny Petitioner's motion.

## I.    PRELIMINARY STATEMENT

Petitioner brings this motion to vacate an arbitration award upholding Microsoft's decision to block his OneDrive account after Microsoft detected child sexual exploitation and abuse imagery ("CSEAI") in the account—imagery that violates the Code of Conduct Petitioner accepted when he agreed to the Microsoft Services Agreement governing his use of OneDrive.  He does so despite the fact the arbitrator—Harriet Derman, a former New Jersey Superior Court Judge and former Chief of Staff to Governor Christine Todd Whitman—afforded him considerable process in the 18-month arbitration in which Petitioner, who is also a lawyer, was represented by counsel.  In that arbitration, Arbitrator Derman allowed Petitioner to amend his arbitration demand four times, obtain discovery, file numerous briefs, and participate in several oral arguments.

After all that process, Arbitrator Derman rightly concluded, in lengthy and well-reasoned opinions grounded in established legal principles and case law, that: (a) Microsoft acted consistent with its agreement with Petitioner (i.e., the Microsoft Services Agreement) and with the law in blocking his access to OneDrive after

1

detecting CSEAI in the account; and (b) Petitioner had not stated a cognizable claim based on Windows 10. As a result, Arbitrator Derman properly dismissed the arbitration with prejudice and entered the award.

The Court should deny Petitioner's motion to vacate for the following reasons:

*First*, as a threshold matter, Petitioner failed to properly serve Microsoft with this motion to vacate, requiring dismissal at the outset. 9 U.S.C. § 12; *see Richardson v. Babiskin*, 2020 WL 13157448, at *3 (D.N.J. Mar. 24, 2020), *aff'd*, 2022 WL 964199 (3d Cir. Mar. 30, 2022) (motion to vacate was time-barred under the Federal Arbitration Act).

*Second*, the Arbitrator correctly dismissed Petitioner's (a) OneDrive account-closure claims based on the language of the Microsoft Services Agreement and Section 230(c)(2) of the Communications Decency Act, 47 U.S.C. § 230(c)(2); and (b) Windows 10 claims based on failure to state a cognizable claim. In particular, the Arbitrator properly articulated the "good faith" standard under Section 230(c)(2), and rightly applied that standard to the facts here, where Microsoft showed it detected the CSEAI in Petitioner's OneDrive and actioned his account as a result using its standardized scanning and account closure procedures. Petitioner therefore cannot show the award was entered in contravention of established law or consists of manifest error, as would be required to vacate an arbitration award.

*Third*, the Arbitrator properly exercised her discretion under the AAA

2

Consumer Rules to permit dispositive briefing in this case, *see* AAA Consumer R-33, and she followed settled court practice in permitting Microsoft to submit a proposed order, and then revising and issuing her own order based on Microsoft's proposed version.

Under established law, this Court must enforce an arbitration award unless there is "absolutely no support at all in the record justifying the arbitrator's determinations." *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995). Petitioner comes nowhere close to meeting that standard, and the Court should deny his motion.

## II.   STATEMENT OF FACTS

### A.   Microsoft's Code of Conduct, and Microsoft's Detection of CSEAI in and Blocking of Petitioner's Account

In service of its commitment to fostering a safe online environment, Microsoft has created a Code of Conduct that consumers must accept to use Microsoft services. Petitioner created and used a Microsoft Services Account to access OneDrive, and in so doing accepted the Microsoft Services Agreement ("MSA"), which governs use of OneDrive, among other Microsoft services. *See, e.g.*, Declaration of Marc R. Shapiro ("Shapiro Decl.") Ex. 13 at ¶ 5. The third paragraph of the MSA establishes Microsoft's Code of Conduct. *Id.* at Ex. 1 (MSA) ¶ 3. The Code of Conduct provides, in relevant part, that users must not "engage in any activity that exploits, harms, or threatens to harm children," or "engage in activity that violates the privacy

3

of others." *Id.* at Ex. 1, ¶ 3.a.ii & 3.a.ix (Code of Conduct). The MSA reserves Microsoft's right to enforce the Code by, among other things, removing content from its services, banning participants, and/or terminating services. *Id.* at Ex. 1, ¶ 3.b.

Microsoft enforces the Code of Conduct through automated, standardized protocols, including scanning, that detect accounts containing CSEAI.[1] *Id.* at Ex. 9 (Affidavit of Sean Davis), ¶¶ 2-11. Microsoft's scanning technology is called PhotoDNA. PhotoDNA is an industry-leading image-matching technology that runs across a number of Microsoft services, including OneDrive, and identifies CSEAI. *Id.* PhotoDNA is highly accurate, with an error rate of 1 in 50 billion. *Id.* at Ex. 18. Microsoft's content analysts confirm that images flagged by PhotoDNA are CSEAI. *Id.* at Ex. 9, ¶ 10. Consistent with the Code of Conduct's enforcement provisions, when Microsoft identifies CSEAI in a customer's account, Microsoft blocks the user's Microsoft Services Account and thereby, the user's access to all services governed by that Account, including, as relevant in this case, OneDrive. *Id.* at Ex. 9, ¶ 11. Microsoft also, as required by federal law, sends a CyberTipline report to the National Center for Missing and Exploited Children. 18 U.S.C. § 2258A(a). The MSA, including the MSA's Privacy Statement and Code of Conduct, expressly

---

[1] *See id.* at Ex. 2 (Privacy Statement, incorporated into the MSA in paragraph 1 of the MSA), p. 8 ("[S]ome of our products, such as Outlook or OneDrive, systematically scan content in an automated manner to identify … abusive actions….").

4

permit Microsoft to scan users' content to enforce the terms of use, and to suspend (i.e., block) Microsoft Services accounts where the customer violates the Code of Conduct, as in the case of a CSEAI detection.[2]

On May 12, 2020, Microsoft's PhotoDNA technology detected CSEAI in Petitioner's OneDrive account.  Shapiro Decl. Ex. 9, ¶ 12.  The image had been confirmed by human review to be CSEAI "A1"—a sex act involving a pre-pubescent child and the most egregious form of this content.  *Id.*  Because this constituted a violation of the Code of Conduct, Microsoft permanently suspended Petitioner's Microsoft Services Account (and thereby, his ability to access OneDrive) pursuant to the MSA.  *Id.* at Ex. 9, ¶ 13.

One month after his account was suspended, Petitioner purportedly attempted to update his Windows 10 software and received an error message.  *Id.* at Ex. 22, p. 2-3.  Rather than seek help from Microsoft, he then retained non-Microsoft IT technicians to assist him.  *Id.* at p. 3.  During the course of their efforts to reinstall Windows 10, Petitioner's data was allegedly erased.  *Id.*

//

---

[2] Shapiro Decl. Ex. 2 (Privacy Statement), pp. 9-10 ("[W]e will retain, access, … personal data, including your content (such as the content of your … files in private folders on OneDrive), when we have a good faith belief that doing so is necessary to … enforc[e] the terms governing the use of the services."); Ex. 1 (MSA), ¶ 3.b (Code of Conduct, Enforcement) ("When investigating alleged violations of these Terms, Microsoft reserves the right to review Your Content….").

### B.      Procedural Background

Petitioner filed his arbitration demand with the American Arbitration Association ("AAA") against Microsoft on August 14, 2020.  *Id.* at Ex. 3; *see also* Ex. 1, ¶ 15 (selecting the AAA as Microsoft's arbitration provider and describing the process for filing an arbitration).  Ultimately, his operative demand asserted breach of contract, breach of the implied duty of good faith and fair dealing, negligence, "breach of privacy," conversion, and consumer fraud claims based on Microsoft's suspension of his OneDrive account (the "OneDrive Claims.").  *Id.* at Ex. 24.  He also alleged breach of contract under the End-User Licensing Agreement governing Windows 10, and negligence, for the alleged loss of data as a result of a Windows 10 update (the "Windows 10 Claims.").  *Id.*

On November 9, 2020, the AAA appointed the Honorable Harriet Derman to serve as the arbitrator.  *Id.* at Ex. 5.  In the Arbitrator Oath Form provided to the parties, Judge Derman disclosed she held $70,000 worth of Microsoft stock in a managed brokerage account.  *Id.* at Ex. 5, ¶ 12.  She stated she could be fair and impartial.  *Id.*  The parties then had five days to object to the appointment of Judge Derman.  *Id.* at p. 1.  Neither party objected.  *Id.* at Ex. 6.

On December 3, 2020, the Arbitrator held a preliminary hearing, at which Petitioner requested and was permitted to file a motion for emergent relief in which he sought immediate return of his data.  *Id.* at Ex. 7.  Additionally, Microsoft

requested and was permitted to file a dispositive motion as to all claims pursuant to AAA Consumer Rule R-33. *Id.* The Arbitrator held argument on Petitioner's motion and, ultimately, denied the request. *Id.* at Ex. 10. Petitioner then retained counsel. *Id.* at Ex. 11.

The parties, through their respective counsel, then negotiated a scheduling order, which the Arbitrator adopted on February 24, 2021. *Id.* at Exs. 12-13. In that order, the parties stated: "**Consent to the Arbitration and the Arbitrator:** Each of the parties, through counsel, confirmed that they consent, and have no objections, to Hon. Harriet Derman, J.S.C., serving as the Arbitrator in this matter." *Id.* at Ex. 13, ¶ 4. The scheduling order also gave Petitioner an opportunity to amend his demand a second time, provided for certain discovery, permitted Petitioner to file a motion to compel, and set forth a dispositive motion briefing schedule on Microsoft's Section 230 defense.[3] *Id.* at Ex. 13.

On March 26, 2021, Petitioner filed his motion to compel production of the CSEAI image. *Id.* at Ex. 14. On May 3, 2021, Judge Derman held a hearing where

---

[3] Microsoft originally thought the CSEAI image had been shared by Petitioner because PhotoDNA is designed to scan images with a "shared" status in OneDrive. However, during discovery, Microsoft learned that a "recap" feature caused PhotoDNA to scan some images in OneDrive in some instances where those images had not been "shared." Thus, contrary to Petitioner's contention, Microsoft did not "scan[] all of Claimant's 'private' documents without his permission." In any event, there is no dispute that the CSEAI image was in Petitioner's OneDrive and was therefore subject to scanning under the MSA and the MSA's Privacy Statement, neither of which limits Microsoft's scanning to "shared" content only.

Microsoft requested, and was permitted, to file a dispositive motion under Section 230—which affords provider immunity from civil claims for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider … considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable," 47 U.S.C. § 230(c)(2)(A)—simultaneous with Petitioner's motion to compel, since the issues were related.  Shapiro Decl. at Ex. 15.  The parties also raised, and Judge Derman agreed, that both parties could file further dispositive motions before any evidentiary hearing. *See id.* at Ex. 15, ¶ 7.

In its Section 230 briefing, Microsoft explained that it met the three requirements for statutory immunity.  *See id.* at Ex. 15.  In particular, Microsoft showed that (a) OneDrive is an interactive computer service, (b) Microsoft identified covered material (indeed, Microsoft's Code of Conduct makes clear that Microsoft considers CSEAI objectionable), and (c) Microsoft acted in good faith when it detected the CSEAI and suspended Petitioner's account, as Microsoft followed its automated and standardized procedures in taking these steps, and it did so consistent with the MSA, including the Privacy Statement and Code of Conduct.  *Id.* at Ex. 17.  Microsoft also responded to Petitioner's motion to compel by explaining that Microsoft could not produce child sexual exploitation and abuse imagery without risking violating federal laws that prohibit the dissemination of child sexual exploitation material.  *Id.* at Ex. 19.

In response to Microsoft's Section 230 motion, Petitioner's counsel sought and obtained from the Arbitrator permission to amend Petitioner's demand for a fourth time. *Id.* at Ex. 21.

The Arbitrator set oral argument on Microsoft's motion for judgment on the pleadings as to the OneDrive claims under Section 230(c)(2)(A) and on Petitioner's motion to compel for June 28, 2021. *Id.* at Ex. 15, ¶ 4. The Arbitrator noted from her review of the papers that "it appeared [to her that] Microsoft was seeking a total dismissal in its moving papers." *Id.* at Ex. 33, n. 2. She therefore requested additional briefing on Petitioner's Windows 10 claims, which the parties provided. *Id.* at Ex. 25.

After oral argument, Judge Derman issued a lengthy oral ruling. *Id.* at ¶ 27. Over the course of nearly twenty minutes, she recounted the procedural and factual background of the case, set forth the parties' competing positions, described the undisputed evidence, identified governing Section 230 law, applied it in light of the parties' pleadings, and dismissed the OneDrive claims. *Id.* On other hand, Judge Derman declined to dismiss the Windows 10 claims, explaining "sufficient time was [not] available for the claimant to articulate his position" on those claims. *Id.* at Exs. 27; 31 (21:19-21).

Given the length and detail of the oral ruling and the involved nature of the arbitration proceedings, Microsoft inquired whether the Arbitrator would prefer a

written order and offered to submit a proposed order memorializing her oral ruling. *Id.* at ¶ 27.  Petitioner did not object to the request or procedure.  *Id.*  Judge Derman "carefully reviewed and modified the Order submitted by Microsoft" and Petitioner "never objected to the form of Order signed on August 23, 2021." *Id.* at Ex. 33, n. 3.

The parties then agreed upon a briefing schedule for the remaining Windows 10 claims.  *Id.* at ¶ 28, Ex. 26.  After the parties completed that briefing, Judge Derman held argument on December 1, 2021.[4]  *Id.* at Ex. 31.  On February 8, 2022, Judge Derman issued an order dismissing the remaining Windows 10 claims and indicated a more detailed decision would follow on the Windows 10 claims.  *Id.* at Ex. 32.  On February 10, 2022, she issued that opinion in yet another lengthy, reasoned order.  *Id.* at Ex. 33.

## C.   **The Arbitration Rulings**

***OneDrive Claims.***   In Judge Derman's August 18, 2021 oral ruling and confirmatory written decision on August 23, 2021, she dismissed all of Petitioner's

---

[4] At argument, Petitioner raised concerns regarding the timing and procedure of the Windows 10 briefing, including suggesting the Arbitrator had *sua sponte* requested additional briefing.  Setting aside the fact that arbitrators, like courts, have discretion to request additional briefing, Microsoft's original motion for judgment on the pleadings had sought dismissal of all claims, so the Arbitrator's request for additional briefing on the remaining Windows 10 claims was not only appropriate, but also afforded Petitioner an additional opportunity to oppose Microsoft's request that these claims be dismissed, too.  *Id.* at Ex. 18.

OneDrive claims on Section 230 grounds.  *Id.* at Ex. 27.  Judge Derman explained OneDrive qualifies as an "interactive computer service," Microsoft's Code of Conduct makes clear that it considers CSEAI to be objectionable conduct that may result in account suspension, its Privacy Statement discloses its practice of automated scanning (including private content), and Microsoft acted in good faith because it did not target Petitioner but suspended his account following uniform, automated, and standardized protocols.  *Id.*

***Windows 10 Claims***.  Judge Derman's February 7, 2022, opinion dismissed Petitioner's Windows 10 claims because (1) the breach of contract claims failed to identify any provision of the governing and enforceable contract (the End-User Licensing Agreement) that Microsoft breached; even if there was a breach, Petitioner is not entitled to any financial recovery under the terms of the agreement; and all warranties expired years before the events at issue, and (2) Petitioner's negligence claim, which mirrored his breach of contract claim, was foreclosed by the economic loss doctrine.  *Id.* at Ex. 33.

### D.   Petitioner's Motion to Vacate the Arbitration Award

On May 9, 2022, Petitioner emailed undersigned counsel with a copy of his motion to vacate and sent the same via certified mail.  *Id.* at Ex. 34.  In advance, he never inquired whether undersigned counsel continued to represent Microsoft in this matter and/or whether Microsoft had approved counsel accepting service on its

11

behalf.  *Id.* at ¶ 38; Declaration of Rebecca J. Francis ("Francis Decl.") ¶ 4.

Petitioner's principal arguments in his Motion to Vacate here focus on the OneDrive claims.  He argues the Arbitrator impermissibly adopted an "absolute and complete subjective discretion" standard and erred in dismissing his consumer fraud claim under Section 230.  Mot. at pp. 2, 4.  Petitioner's other arguments largely challenge (a) the evidence—contending, for example, that Microsoft's policies prohibit scanning of private information (they do not)—or (b) the processes during the arbitration—arguing the Arbitrator should have compelled Microsoft to produce the child sexual exploitation and abuse image to him, the Arbitrator improperly used Microsoft's draft order, and did not conduct her own independent review of the case law.  *See generally* Mot.  Petitioner's only other argument is that he continues to be charged for OneDrive services and is owed about $200 (notwithstanding that he was told at the outset of the litigation, as early as December 2020, that his cancellation recourse is through Apple, with whom he contracted for the services).  *Id.* at p. 4.

### III.   <u>LEGAL STANDARD</u>

"The Federal Arbitration Act codifies Congress' desire to uphold private arbitration agreements that produce prompt and fair dispute resolution without involving the courts." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 238–39 (3d Cir. 2005).  "In furtherance of this interest, a court must scrupulously honor the bargains implicit in such agreements and interfere only when

an award is severely problematic." *Id.*  There is thus a "strong presumption under the [FAA] in favor of enforcing arbitration awards…." *Id.* at 241; *Caputo v. Wells Fargo Advisors, LLC*, 2020 WL 2786934, at *2 (D.N.J. May 29, 2020) (C. J. Wolfson) (citing *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013)).

As such, the standard of review applicable to arbitration awards is "highly deferential." *ABS Brokerage Servs., LLC v. Penson Fin. Servs., Inc.*, 2010 WL 2723173, at *1 (D.N.J. July 8, 2010).   The FAA prohibits courts from "reconsider[ing] the merits of an arbitration panel's decision." *Id.*; *see also Huertas v. Foulke Mgmt. Corp.*, 2021 WL 1138149, at *1 (D.N.J. Mar. 25, 2021), *aff'd*, 2021 WL 5984696 (3d Cir. Dec. 17, 2021) (citations and internal quotation marks omitted).  Rather, a reviewing court "must take a limited approach and vacate an arbitration award 'in the rarest case[s].'"  *Caputo*, 2020 WL 2786934, at *2 (citing *Newark Morning Ledger Co. v. Newark Typographical Union*, 797 F.2d 162, 165 (3d Cir. 1986)).

The rare statutory grounds upon which an arbitration award may be vacated are as follows:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear

evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1-4).  In certain circumstances, courts have also vacated an award on the non-statutory basis that the award is "in manifest disregard of the law." Petitioner identifies § 10(a)(2)-(4) as well as "manifest disregard" as the bases for his motion to vacate.

## IV.   NO GROUNDS EXIST FOR VACATING THE ARBITRATION AWARD

### A.   Petitioner's Failure to Serve Microsoft Warrants Dismissal of the Motion to Vacate

Petitioner's motion fails at the outset because he did not serve Microsoft with a notice of the petition to vacate the arbitration award within the three-month period required by Section 12 of the FAA.  *See* 9 U.S.C. § 12.

Section 12 establishes the method by which a party must serve a notice of a petition to vacate an arbitration award.  It states, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  *Id.*  "If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice

of motion in an action in the same court."  *Id.*  For residents of New Jersey,[5] the FAA's requirement means that Fed. R. Civ. P. 5 applies.  *See* D.N.J. Local Rule 5.1(a).

Here, Petitioner did not serve Microsoft.  Instead, he attempted service upon undersigned counsel, ostensibly believing Microsoft was "represented by an attorney."  Shapiro Decl. ¶ 38, Ex. 34.  However, "service on one's attorney is proper *only* when the client expressly or impliedly authorizes the attorney to accept service on his or her behalf."  *Siegmeister v. Benford*, 2017 WL 2399573, at *5 (D.N.J. June 1, 2017) (citation omitted) (emphasis added).  Microsoft did not authorize Orrick to accept service of process on Microsoft's behalf for any proceeding in district court.  Francis Decl. ¶ 3.  Nor did Microsoft or undersigned counsel provide Petitioner with consent to effect service by sending copies of the motion to vacate to Orrick.  *Id*. at ¶ 4; Shapiro Decl. ¶ 38.

Petitioner is thus left to argue the existence of a preexisting relationship between Orrick and Microsoft suffices.  It does not.  "The mere relationship between a defendant and his attorney does not, in itself, convey authority to accept service." *Siegmeister*, 2017 WL 2399573, at *5 (citing *United States v. Ziegler Bolt & Parts*

---

[5] Where a party consents to arbitration within a given forum, it is considered a resident of that forum. *See, e.g.*, *O'Neal Constructors, LLC v. DRT Am., LLC*, 440 F. Supp. 3d 1396, 1401 (N.D. Ga. 2020), *aff'd in part, appeal dismissed in part*, 991 F.3d 1376 (11th Cir. 2021).

*Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997)).  Although Microsoft authorized Orrick to accept service on Microsoft's behalf in the underlying arbitration (once that arbitration had begun), that authorization was limited to papers served in that arbitration and did not extend to post-arbitration proceedings in federal court.  *Cf. Dalla-Longa v. Magnetar Capital LLC*, -- F.4th --, 2022 WL 1493463, at *2 (2d Cir. May 12, 2022) (counsel's consent to email service in the underlying arbitration did not carry over to supply consent in district court proceedings on motion to vacate). Petitioner had until May 11, 2022 to serve his notice of the petition to vacate. Because he did not properly effect service by this deadline, Petitioner failed to comply with Section 12's three-month statute of limitations.

There is "[n]o exception to this three month limitations period."  *In re Patwari*, 2016 WL 1577842, at *8 (Bankr. D.N.J. Apr. 7, 2016) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir.1984)).  By Section 12's plain "terms, a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period."  *Id.*  Courts therefore have found no tolling or discovery-rule type exceptions.  *See, e.g.*, *Dalla-Longa*, 2022 WL 1493463, at *4; *Cigna Ins. Co. v. Huddleston*, 986 F.2d 1418, 1993 WL 58742, at *11 (5th Cir. 1993) (citing cases from the Second, Fourth, Eighth, and Eleventh Circuits).  The Court should dismiss Petitioner's motion on this basis alone.  *See, e.g.*, *Richardson*, 2020 WL 13157448, at *3 (motion to vacate was time-barred under the Federal Arbitration

Act).

### B.   The Arbitrator's Orders Were Consistent with Clearly Established Law (Section I.A.)

Section I.A. of Petitioner's Motion sets forth various allegations concerning the underlying arbitration proceedings.   Mot. 2-3.   Petitioner does not clearly delineate which of these are background facts and which are legal arguments upon which he moves the Court.  As best as Microsoft can discern,[6] Petitioner offers three arguments: Judge Derman allegedly (1) improperly adopted an "absolute and complete discretion" standard in her Section 230 analysis, (2) committed discovery violations by failing to compel Microsoft to produce child sexual exploitation and abuse imagery, and (3) used an order drafted by Microsoft and did not conduct an independent review of case law.  Petitioner is wrong on each count.

### 1.   Judge Derman Applied the Proper Section 230 Standard

Petitioner contends "Arbitrator Derman manifestly disregarded settled law" insofar as she "believed the law allowed Microsoft absolute and subjective discretion to determine what an objectionable image is to achieve Section 230 immunity."

---

[6] Microsoft reserves the right to reply to any new arguments Petitioner might offer in a responsive filing or to move to strike such new argument.  *See Ogbebor v. J.P. Morgan Chase, N.A.*, 2017 WL 449596, at *13 n.18 (D.N.J. Feb. 2, 2017) (Wolfson, J.) (indicating proper recourse in response to new arguments in reply is to move to strike or seek permission for a sur-reply); *see also Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 551 (N.D. Tex. 2006) (striking new argument raised in reply in support of motion to vacate).

Mot. 2; *see also* Mot. 3 (asserting Arbitrator's "opinion manifestly disregards settled case law" by allowing for "absolute" rather than "some" subjective discretion).  As a threshold matter, the Supreme Court has cast doubt on whether the non-statutory manifest disregard standard supplies a basis for vacating an arbitration award.  *See Hall Street Assoc. LLC v. Mattel, Inc.*, 552 U.S. 576 (2008) (casting doubt on whether an arbitration award may be vacated based on "manifest disregard," as that ground is not enumerated in 9 U.S.C. § 10(a)).[7]  Even assuming the standard does apply, it would not justify vacatur here because Petitioner cannot show manifest disregard.

The manifest disregard standard is an "extremely deferential" one.  *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 121 (3d Cir. 2016).  Vacatur on these grounds "requires more than legal error."  *Caputo v. Wells Fargo Advisors, LLC*, 2022 WL 1449176, at *4 (3d Cir. May 9, 2022).  "Rather, the arbitrators' decision must fly in the face of clearly established legal precedent, such as where an arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it."  *Id.*  Accordingly, manifest disregard is "used 'only [in] those exceedingly rare circumstances where some egregious impropriety on the party of the arbitrators is apparent, but where none of the provisions of the [FAA]

---

[7] *See also Caputo v. Wells Fargo Advisors, LLC*, 2022 WL 1449176, at n. 11 (3d Cir. May 9, 2022) (noting the Third Circuit "has not yet weighed in on whether the[] [manifest disregard] grounds for vacatur survive" *Hall Street*).

apply.'" *Caputo*, 2020 WL 2786934, at *4.

Contrary to Petitioner's contention, the Arbitrator did not believe the law "allowed Microsoft absolute and complete subjective discretion." Mot. 2. The issue of discretion arose in the context of Section 230's "good faith" inquiry. As the Arbitrator explained, Section 230(c)(2)(A) provides provider immunity from civil claims for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable ...." Shapiro Decl. Ex. 27, ¶ 2; *see also* 47 U.S.C. § 230(c)(2)(A). Under long-standing case law, a provider acts in good faith if its conduct conforms with industry standards and it did not target the plaintiff. *See, e.g.*, *Holomaxx Techs. v. Yahoo!, Inc.*, 2011 WL 3740827, at *2 (N.D. Cal. Aug. 23, 2011) (dismissing claim on Section 230 grounds where plaintiff failed to identify violated industry standard); *e-Ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1271 (M.D. Fl. 2016) (refusing to dismiss where defendant had history of targeting particular consumers). Here, Judge Derman recognized Microsoft acted in good faith because it did not single out Petitioner. Shapiro Decl. Ex. 27, ¶ 17. Instead, Microsoft identified the image from his OneDrive account through a standardized, automated search technology that applies indiscriminately across Microsoft's consumer OneDrive.

Nonetheless, Petitioner argued Microsoft was not entitled to immunity

because Microsoft supposedly made a mistake. *Id.* at Ex. 27, ¶ 18. Stated otherwise, Petitioner was of the view that if his content was not "actually objectionable," Microsoft was not entitled to immunity. The Arbitrator declined to adopt Petitioner's "actually objectionable" standard. That interpretation, the Arbitrator explained, would defy the plain terms of Section 230(c)(2)(A), which protects actions involving content a provider "*considers to be ... objectionable.*" *Id.* at Ex. 27, p. 1 (emphasis added). Petitioner's argument would also contravene governing case law, which has long held that "Section 230(c)(2)(A) does *not* require the user or provider of an interactive computer service to demonstrate that the otherwise 'objectionable' material is *actually objectionable.*" *Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, 2011 WL 900096, at *5 (D.N.J. Mar. 15, 2011) (citing *Zango v. Kaspersky Lab, Inc.*, 2007 WL 5189857, at *4 (W.D. Wash. Aug. 28, 2007)) (emphasis added). Finally, Petitioner's argument would, as the Arbitrator explained, deter companies from taking action to promote safe platforms, thereby undermining the goals of Section 230. Shapiro Decl. Ex. 27, ¶ 18. Accordingly, the Arbitrator followed the statute and case law and held that Microsoft is entitled to Section 230(c)(2)(A) protection for material it "*consider[s]* to be ... objectionable." *Id.* at Ex. 27, ¶¶ 2, 18 (emphasis added).

That, of course, does not mean providers have "absolute and complete discretion." Mot. 2. And the Arbitrator never concluded otherwise. Indeed, even

in his motion to this Court Petitioner acknowledges, as he must, that the Arbitrator explained companies are entitled to "*some* degree of subjective discretion" (cabined by the good faith requirement).  Mot. 3.  Petitioner may not seek to show manifest disregard by conveniently mischaracterizing the Arbitrator's order.[8]

### 2.   Judge Derman Properly Denied Petitioner's Motion to Compel Disclosure of CSEAI Material

Petitioner also argues the Arbitrator erred by "ruling that Claimant's Motion to Compel Microsoft to produce the [CSEAI] image was moot."   Mot. 2. Specifically, Petitioner contends the Arbitrator's decision not to compel Microsoft to produce (or identify the person who reviewed) the offending image was predicated upon her erroneous belief that it did not matter whether Microsoft made a mistake. *Id.*  But the Arbitrator was right:  "Under the law, a mistaken choice to block, if made in good faith, cannot be the basis for liability under federal or state law." *e360Insight, LLC*, 546 F. Supp. 2d at 609; *see also NetChoice, LLC v. Moody*, 546 F. Supp. 3d 1082, 1090 (N.D. Fla. June 30, 2021) ("[E]ven a mistaken application

---

[8] Petitioner seems to be arguing there cannot be good faith here because he continues to insist the CSEAI that PhotoDNA flagged in his OneDrive was a false positive. Setting aside the fact there is no evidence to support that notion, as Microsoft showed (and as the Arbitrator acknowledged), under settled law, the "good faith" standard in Section 230(c)(2)(A) does not require perfection.  It is enough where, as here, the provider followed standardized procedures that did not target the plaintiff, and the provider blocked access to content the provider "considers to be" any of the enumerated items in Section 230(c)(2)(A).  *See e360Insight, LLC, v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) ("[A] mistaken choice to block, if made in good faith, cannot be the basis for liability under federal or state law.").

of standards may occur in good faith."), *aff'd and vacated in part on other grounds by NetChoice, LLC v. Att'y Gen., Fla.*, 2022 WL 1613291, at \*24 (11th Cir. May 23, 2022); *Word of God Fellowship, Inc. v. Vimeo, Inc.*, 205 A.D.3d 23, 28 (N.Y. 2022) (quoting *e360Insight, LLC*, 546 F. Supp. 2d at 609).  Accordingly, the Arbitrator did not err, manifestly or otherwise, in denying Petitioner's motion to compel Microsoft to produce an image confirmed to be child sexual exploitation and abuse imagery.[9]

### 3.   Judge Derman's Section 230 Order Was Proper

Petitioner takes issue with the preparation of Judge Derman's August 23, 2021 Order, arguing she impermissibly used a draft prepared by Microsoft and conducted no independent review.  Mot. 2-3.  Petitioner's arguments mischaracterize the record and lack legal support.

First, Petitioner claims Judge Derman's August 23, 2021, Order was flawed because she did not independently draft the order.  Mot. 3.  Context is helpful here. Immediately following oral argument on Petitioner's OneDrive claims, Judge Derman issued a lengthy oral ruling, in which she analyzed applicable case law,

---

[9] Although Petitioner complains about the propriety of Microsoft scanning an image in his OneDrive that he may not have shared, he does not argue for vacatur on these grounds.  Mot. 2.  Even if he did, such an argument would fail because as Microsoft explained in the arbitration proceeding, the MSA's Code of Conduct and Privacy Statement neither limit Microsoft's scope of scanning to shared content only nor its ability to suspend accounts based on "private" Code of Conduct violations.  *See* § II.A.; n. 2, *supra*.  And in any event Petitioner nowhere disputes that the image Microsoft detected as CSEAI was in his OneDrive.

recounted the parties' arguments, and set forth undisputed facts. Shapiro Decl. ¶ 27. Because there was no court reporter present, Microsoft offered to propose a draft order for Judge Derman's review memorializing her oral reasoning. *Id.* Microsoft's counsel provided a copy of that proposed order to Petitioner's counsel; Petitioner made no objection to the contents of the proposed order.[10] *Id.* at ¶¶ 27-28, Ex. 26. Judge Derman then independently reviewed the draft and edited it. *Id.* at Ex. 27A. In a subsequent opinion, Judge Derman recounted all of this, explaining, "[t]he Arbitrator carefully reviewed and modified the Order submitted by Microsoft. [Petitioner] never objected to the form of Order signed on August 23, 2021." *Id.* at Ex. 33, n.3.

Far from defying any law, Microsoft's memorializing of the Arbitrator's oral statements conforms with local practice across the country. *See, e.g.,* D.N.J. Local Rule 7.1.(e) ("All filed motions shall have annexed thereto a proposed order. If the proposed order does not adequately reflect the Court's ruling, the prevailing party, if directed by the Court, shall submit an order within seven days of the ruling on the motion on notice to all other parties."). Petitioner simply cannot establish manifest

---

[10] Petitioner asserts the "draft was materially inconsistent with a number of findings Arbitrator Derman orally found … and included a number of findings Arbitrator Derman never addressed." Mot. 3. However, Petitioner identifies no such material inconsistencies, nor does he explain how, in light of the Arbitrator's review of the draft and modifications, any alterations would not constitute the Arbitrator's own, independent reasoning.

disregard of the law on this basis.

Second, Petitioner asserts Judge Derman did not do her own independent review of the case law.  Mot. 3.  Petitioner presents no evidence in support of this contention.  And all of the evidence is to the contrary.  Judge Derman asked the parties to supply her with copies of all unpublished opinions.  *See, e.g.*, Shapiro Decl. Ex. 20.  Moreover, the Arbitrator clearly conducted her own independent research, as reflected by her opinions being replete with case citations not supplied by the parties.[11]  Shapiro Decl. ¶ 37.  Conjecture, such as Petitioner's, that the Arbitrator declined to engage in any independent review of the law, does not supply a basis for vacating an arbitration award.  *Wallace v. Buttar*, 378 F.3d 182, 191 n. 3 (2d Cir. 2004) (finding "no basis upon which [the court] can impose a duty upon arbitrators to ascertain the legal principles that govern a particular claim through the conduct of independent legal research"); *see also Green v. Nevers,* 1993 WL 1620511, at *27 (E.D. Mich. April 13, 1993) (courts have no obligation to share their "independent legal research and [exact] analysis with counsel before issuing [their] ruling[s]").

Petitioner's conclusion apparently flows from his belief that the Arbitrator must not have read any cases because she would have realized he "specifically cite[d] to numerous cases under Section 230(c)(2)."  Mot. 3.  But the Arbitrator did

---

[11] Moreover, during argument on the Windows 10 claims, Judge Derman indicated she reviewed cases cited by the parties.  Shapiro Decl. Ex. 31, 32:8-12.

not say Petitioner cited no Section 230(c)(2) cases.  She said Petitioner did not cite

Section 230(c)(2) cases "*dealing with published or shared content.*"  Shapiro Decl.

Ex. 27, ¶ 19 (emphasis added).  As Microsoft argued, and Judge Derman agreed,

each of the four cases Petitioner relied on in arguing Section 230 has a "limited

reach" (and therefore did not apply to private content) involved claims brought under

Section 230(c)(1).  *Id.* at Ex. 24, n. 2; Ex. 23, p. 17; Ex. 27, ¶ 19.  Indeed, Petitioner

*still* cites no authority under Section 230(c)(2) that says the provision applies only

when the restricted content was first published or shared.  Petitioner's attempts to

distort Judge Derman's ruling to support his Motion necessarily fail.[12]  *See, e.g.*,

*Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1297 (3d Cir. 1996)

("Arbitrators' decisions are subject to a standard of only minimal rationality.")

(citation and internal quotations omitted); *Roberts & Schaefer Co. v. Local 1846,*

---

[12] Petitioner also opaquely asserts that "new federal case law" since the Arbitrator's ruling supports his position. Mot. 3. Petitioner supplies no such case law, but to the extent he is referring to the Second Circuit's subsequent decision to withdraw its opinion and issue a new unpublished opinion in *Domen v. Vimeo*, he is wrong. That *Vimeo* opinion does not address Section 230, and in any event, Judge Derman cited and relied upon ample other case law supporting her decision. 2021 WL 4352312 (2d Cir. Sept. 24, 2021), *cert. denied*, 142 S.Ct. 1371 (2022). Even if all that were otherwise (and it is not), authority the Arbitrator was not able to consider, by definition, cannot constitute a manifest disregard. *See, e.g.*, *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 125 (2d Cir. 2011) ("[I]ntervening change of law, standing alone, [does not] provide[] grounds for vacating an otherwise proper arbitral award."); *Wulfe v. Valero Refining Co.-Cal.*, 687 Fed. Appx. 646, 648 (9th Cir. 2017) ("That the arbitrator failed to correctly predict future judicial decisions does not mean she acted in 'manifest disregard' of existing law.").

*UMW*, 812 F.2d 883, 885 (3d Cir. 1987) ("Even [in cases where] the award was 'dubious,' and the result one that we would not have reached had the matter been submitted to the court originally, we have upheld the arbitrator's decision.").

**C.    The Arbitrator Properly Dismissed Petitioner's Consumer Protection Claim (Section I.B.)**

Petitioner claims the Arbitrator erred by dismissing his New Jersey Consumer Fraud claim because "[n]o reasonable arbitrator could possibly find that Section 230 immunity can cover fraudulent advertising, as that immunity is only related to the scanning and removal of objectionable images." Mot. 4.  Petitioner offers no support for this argument.  That he does not is unsurprising given (and as the Arbitrator recognized), numerous courts have held Section 230 immunity applies to consumer protection claims.  Shapiro Decl., Ex. 27, p. 6 (citing, for example, *e360 Insights*, 546 F. Supp. 2d 605, 607, 609-10 (N. D. Ill 2008) (holding "§ 230(c) precludes proceeding on any of the claims," which included "a claim for deceptive or unfair practices barred by the Illinois Consumer Fraud Act")); *see also, e.g.*, *Dennis v. MyLife.Com, Inc*., 2021 WL 6049830, at *5 (D.N.J. Dec. 20, 2021) (Section 230 applies to claims related to consumer protection, defamation, invasion of privacy, as such "liability [would be] inconsistent" with Section 230") (citation omitted); *Doe ex rel. Roe v. Backpage.com, LLC,* 104 F. Supp. 3d 149, 162 (D. Mass. 2015), *aff'd sub nom. Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016) (rejecting contention that state consumer protection claim survives Section 230

26

immunity).

"[A] court reviewing an arbitration award for manifest disregard of the law 'should not vacate an award unless it finds 'both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit and clearly applicable to the case.'" *Caputo*, 2020 WL 2786934, at *4 (citations omitted). Here, Petitioner identifies no "governing legal principle" the Arbitrator was aware of and ignored, much less delineates a "well defined" and "clearly applicable" body of case law. It necessarily follows then that even if Petitioner could cite cases to support his position, that would not suffice because mere disagreement among courts over the law cannot supply a basis for vacating an arbitrator's award.[13] *Id.*

### D. The Arbitrator Addressed Petitioner's Claims, Which Are Meritless In Any Event (Section I.C.)

Petitioner contends the Arbitrator failed to address his claim that he continues to be charged a monthly service fee. Mot. 4. Petitioner is mistaken. In her initial ruling on the OneDrive claims, the Arbitrator made clear she was dismissing all claims except Section F of Count 2 and Section E of Count 4. Shapiro Decl. Ex. 27.

---

[13] Moreover, Petitioner's consumer protection allegations were wholly conclusory (Shapiro Decl. Ex. 22) and now appear to be derivative of his well-addressed claim for breach of good faith and fair dealing (*Compare* Mot. 4 *with* Shapiro Decl. Ex. 22), a claim he effectively admits Section 230(c)(2) encompasses, as he does not seek vacatur on that ground.

To the extent Petitioner believed the OneDrive opinion did not address (or did not adequately address) the monthly fee issue, he had ample opportunity to bring that to the Arbitrator's attention, as the arbitration proceedings continued (including briefing on outstanding claims) for five more months.

And there was ample reason for dismissing the claim. As Microsoft explained at the outset of the arbitration (as far back as December 2020) Petitioner's contract for the OneDrive subscription was with *Apple* because he purchased the subscription through his iPhone. *See Id.* at Ex. 8, pp. 8-9. Petitioner's own documents confirm this billing arrangement. *Id.* at Ex. 3, p. 11. Microsoft's counsel then reiterated the point to Petitioner's counsel during meet and confer sessions. *Id.* at ¶ 9. For his part, Petitioner has never denied that he could cancel this subscription through his Apple iTunes account. *Id.* Petitioner's apparent failure to cancel his subscription with Apple, despite knowing for nearly 1.5 years that he needed to go to Apple to cancel this subscription, is the source of any ongoing payment obligation he claims to have—not Microsoft. *See, e.g.*, *Sean Wood, LLC. v. Hegarty Group, Inc*., 422 N.J. Super. 500, 519 (App. Div. 2011) ("Damages will not be recovered to the extent that the injured party could have avoided his losses through reasonable efforts without undue risk, burden or humiliation."); *Panniel v. Diaz*, 376 N.J. Super. 597, n. 5 (Law Div. 2004) ("[A] plaintiff who has suffered an injury as the proximate result of a tort cannot recover for any portion of the harm that by the exercise of

28

ordinary care he could have avoided.") (citations and quotations omitted).

**E.    The Arbitrator Did Not Exceed Her Powers As Regards Dispositive Briefing (Section II)**

In his final challenge, Petitioner takes issue with the Arbitrator's willingness to entertain a dispositive motion on his Windows 10 Claims. Mot. 5. He contends the Arbitrator contravened AAA Rule-33 because "Microsoft never requested a dispositive motion" on these claims. Mot. 5. As an initial matter, Petitioner appears to read AAA Rule-33 to preclude *sua sponte* requests for dispositive motions. Nothing in the Rule contains such a prohibition. To construe it otherwise would undermine the AAA Rules' goal of "achiev[ing] a fair, efficient, and economical resolution of the case." Shapiro Decl. Ex. 5, AAA Consumer Rule-23. In any event, Petitioner is wrong. Microsoft *did* request a dispositive motion on the Windows 10 claims. In fact, Microsoft made the request *twice* and was granted the authority to file dispositive motions as to all claims pursuant to R-33.[14] *Id.* at Exs. 7; 15. Although the requests contemplated a later filing of the motion, upon becoming more familiar with the parties' positions, the Arbitrator properly exercised her authority to modify the case schedule and move up the deadline. *Id.* at Ex. 4, AAA

---

[14] When this issue arose at oral argument (after several months of briefing on the Windows 10 claims), Microsoft explained it previously secured permission to file a dispositive motion and, regardless, if necessary, it would make an oral motion on the day of argument and the parties could simply resubmit their briefs. *Id.* at Ex. 31 (24:16-25:11).

Consumer Rules p. 7; R-21; R-23.

Wrangling over timing of dispositive motions is not the stuff of which motions to vacate are made of.  That's because the AAA "Rules offer arbitrators flexibility in conducting the proceedings." *Simons v. Brown*, 444 F. Supp. 3d 642, 652 (E.D. Pa. 2020), *aff'd*, 2022 WL 296636 (3d Cir. Feb. 1, 2022) (citation omitted). Accordingly, any "procedural error must result in 'fundamental unfairness' to warrant vacatur of arbitration award." *Sherrock Bros. v. DaimlerChrysler Motors Co., LLC*, 260 F. App'x 497, 501 (3d Cir. 2008) (citing *Teamsters Loc. 312 v. Matlack, Inc.*, 118 F.3d 985, 995 (3d Cir. 1997)).  Petitioner has not, and cannot, identify any fundamental unfairness engendered by moving up the briefing dates.

Nor does Judge Derman's decision to allow for such briefing evince partiality or corruption on her part. *See Bapu Corp. v. Choice Hotels Int'l, Inc.*, 371 F. App'x 306, 310 (3d Cir. 2010) (to require that an arbitration award be vacated, "the evidence presented to the court must be 'powerfully suggestive of bias'"). Though Judge Derman disclosed her stock ownership prior to her appointment, Petitioner did not object to her serving as the arbitrator at any point throughout the arbitration. In fact, his attorneys agreed to an order that consented to Judge Derman's involvement following her disclosure.  Shapiro Decl. Ex. 13, ¶ 4.  "Because he took no action until after he received a negative result, despite having ample opportunity to object previously, he has waived any claim under [the FAA]." *Weber v. PNC*

*Invs.*, 844 F. App'x 579, 583 (3d Cir. 2021) (citing *Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 148 (3d Cir. 2015) ("[W]here a party is capable of 'thoroughly and systematically digging for dirt on … the [] arbitrators,' it should do so prior to being solely motivated by the chance of vacating the award.")).

## V.   **CONCLUSION**

For the foregoing reasons, Microsoft respectfully requests that this Court deny Petitioner's motion to vacate the arbitration orders.

Date: June 7, 2022                        */s/ Darrell Cafasso*

Darrell Cafasso
dcafasso@orrick.com
Marc R. Shapiro (*Pro Hac Vice Pending*)
mrshapiro@orrick.com
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Tel:  212.506.5000
Fax:  212.506.5151

Natalie Nahabet (*Pro Hac Vice Pending*)
nnahabet@orrick.com
ORRICK, HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel:  213.629.2020
Fax: 213.612.2499
*Attorneys for
Defendant Microsoft Corporation*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2022 I caused a true and correct copy of the

foregoing **MICROSOFT CORPORATION'S OPPOSITION TO**

**PETITIONER'S MOTION TO VACATE ARBITRATION ORDERS** to be

served upon the pro se Petitioner via the Court's CM/ECF system and via certified

mail to Petitioner's last known address at 27 Scheurman Terrace, Warren, New

Jersey 07059-7154.

*/s/ Darrell Cafasso*
Darrell Cafasso

Dated: June 7, 2022

32