<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **THOMAS DEUTSCH,**<br><br>　　　　　　　Petitioner,<br><br>　　　v.<br><br>**MICROSOFT CORPORATION,**<br><br>　　　　　　　Respondent. | Civ. No. 22-2904 (ZNQ) (RLS)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon *pro se* Petitioner Thomas Deutsch's ("Petitioner") Petition and Motion to Vacate the Arbitration Award (the "Motion", ECF No. 1). Petitioner filed a brief in support of the Motion ("Moving Br.", ECF No. 1). Respondent Microsoft Corporation ("Respondent" or "Microsoft") filed opposition ("Opp'n Br.", ECF No. 8) and a Declaration of Marc C. Shapiro ("Shapiro Decl.", ECF No. 8-1). Petitioner filed a reply brief ("Reply Br.", ECF No. 22), along with a Declaration in support of his reply brief ( ECF No. 23.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will DENY Petitioner's Petition and Motion to Vacate the Arbitration Award.

I.　　**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Microsoft created a Code of Conduct that consumers must accept to use Microsoft services. (Opp'n Br. at 3.) Petitioner created and used a Microsoft Services account to access OneDrive.

1

(*Id.*)  In doing so, Petitioner accepted the Microsoft Services Agreement ("MSA", ECF No. 8-2 Ex. 1), which governs the use of OneDrive, among other Microsoft services.  (*Id.*)  The MSA establishes Microsoft's Code of Conduct, which provides that users must not "engage in any activity that exploits, harms, or threatens to harm children, or "engage in any activity thar violates the privacy of others."  (MSA ¶ 3.)  The MSA also provides that Microsoft reserves the right to enforce its Code of Conduct by removing content from its services, banning participants, and/or terminating services.  (*Id.*)

Microsoft additionally enforces its code through an automated, standardized protocol, including scanning technology, that detects accounts containing child sexual exploitation and abuse imagery ("CSEAI").  (Sean Davis Affidavit ¶¶ 2–11 ("Davis Aff."), ECF No. 8-2 Ex. 9.)  Microsoft's scanning technology, PhotoDNA, is an industry-leading image-matching technology that runs across Microsoft's services and identifies CSEAI.  (*Id.* ¶ 10.)  Consistent with its Code of Conduct, when PhotoDNA identifies CSEAI on a customer's account, Microsoft blocks the user's services and his access to all services governed by that Account, including access to OneDrive.  (*Id.* ¶ 11.)  Microsoft also files a CyberTipline report with the National Center for Missing and Exploited Children "(NCMEC) as required by 18 U.S.C. § 2258A.  The MSA expressly permits Microsoft to scan users' content to enforce the terms of use and to suspend Microsoft accounts when the customer violates the Code of Conduct.  (Opp'n Br. at 4.)

On May 12, 2020, Microsoft's PhotoDNA technology detected CSEAI in Petitioner's OneDrive account.  (Davis Aff. ¶ 12.)  Microsoft also conducted a human review of the image and confirmed the image as CSEAI.  (*Id.*)  Because sharing CSEAI from OneDrive is a violation of the Code of Conduct, Microsoft permanently suspended Petitioner's account.  (*Id.* ¶ 13.)  Microsoft also filed a CyberTipline report with NCMEC to report the image match.  (*Id.* ¶ 14.)

One month later, Petitioner attempted to update his Windows 10 software and received an error message. (Petitioner's Fourth Amended Demand at 2–3 ("Fourth Am. Demand"), Shapiro Decl. ¶ 23, ECF No. 8-2 at Ex. 22.) Petitioner retained a non-Microsoft technician to assist him. (*Id*. at 3.) While attempting to reinstall Windows 10, Petitioner's data was allegedly erased. (*Id*.)

On August 14, 2020, Petitioner filed his first arbitration demand against Microsoft with the American Arbitration Association ("AAA"). (ECF No. 8-2 at Ex. 3.) The demand asserted claims of breach of contract, breach of the implied duty of good faith and fair dealing, negligence, breach of privacy, conversion, and consumer fraud based on Microsoft's suspension of Petitioner's OneDrive account (the "OneDrive Claims"). (*See generally*, Fourth Am. Demand.) It additionally alleged breach of contract under the End-User Licensing Agreement governing Windows 10 and negligence for the alleged loss of data as a result of the Windows 10 update. (*See generally*, *id*.)

On November 9, 2020, the AAA appointed the Honorable Harriet Derman, J.S.C. (ret.), to serve as the Arbitrator. (ECF No. 8-2 at Ex. 5.) The Arbitrator disclosed to the parties in the Arbitrator Oath Form that she held $70,000 worth of Microsoft stock in a managed brokerage account. (ECF No. 8-2 at Ex. 5 PageID 113.) The parties thereafter had five days to object to the appointment of Arbitrator Derman. (*Id*. at PageID 110.) Neither party objected. (ECF No. 8-2 at Ex. 6)

On December 3, 2020, the parties appeared before the Arbitrator for a preliminary hearing. (*Id*. at Ex. 7.) Petitioner filed a motion for emergent relief seeking an immediate return of his data. (*Id*.) Microsoft filed a dispositive motion as to all claims pursuant to AAA Consumer Rule-33. (*Id*.) the Arbitrator held argument on Petitioner's motion and ultimately denied his request for emergent relief. (*Id*. at Ex 10.) Petitioner thereafter retained counsel. (*Id*. at Ex. 11.)

The parties negotiated a scheduling order, which was adopted by the Arbitrator on February 24, 2021. ("Scheduling Order", *Id*. at Ex. 13.) The Scheduling Order provided the following: "Each of the parties, through counsel, confirmed that they consent, and have no objections, to Hon. Harriet Derman, J.S.C., serving as the Arbitrator in this matter." (*Id*. ¶ 4.) The Scheduling Order also permitted Petitioner to amend his demand a second time, provided for certain discovery, permitted Petitioner to file a motion to compel, and set forth a dispositive motion briefing schedule on Microsoft's Section 230 defense.[1] (*See generally, id*.)

In its Section 230 briefing, Microsoft argued that is met the three requirements for statutory immunity and sought judgment on the pleadings. (*Id*. at Ex. 17.) Specifically, Microsoft argued that (a) OneDrive is an interactive computer service, (b) Microsoft identified covered material (the Code of Conduct makes clear that Microsoft considers CSEAI objectionable), and (c) Microsoft acted in good faith when it detected the CSEAI and suspended Petitioner's account. (*Id*.) In response, Petitioner sought, and obtained, permission from the Arbitrator to amend his demand for a fourth time. (*Id*. at Ex. 21.)

The Arbitrator scheduled oral argument on Microsoft's motion for judgment on the pleadings and on Petitioner's motion to compel for June 28, 2021. (*Id*. at Ex. 15 ¶ 4.) After oral argument, the Arbitrator issued an oral ruling and dismissed the OneDrive Claims pursuant to 47 U.S.C. § 230. (*Id*. at Ex. 31.) The Arbitrator explained that OneDrive qualifies as an "interactive computer service," Microsoft's Code of Conduct makes clear that it considers CSEAI to be objectionable conduct that may result in account suspension, its Privacy Statement discloses its practice of automated scanning (including private content), and Microsoft acted in good faith

---

[1] A Section 230 defense affords provider immunity from civil claims for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider . . . considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2)(A).

4

because it did not target Petitioner but suspended his account following uniform, automated, and standardized protocols. (*Id*. at Ex. 27.) The Arbitrator declined to dismiss the Windows 10 Claims, explaining that sufficient time was not available for Petitioner to articulate his position on those claims. (*Id*.)

Given the length and detail of the Arbitrator's ruling, Microsoft inquired whether the Arbitrator would prefer a written order and offered to submit a proposed order memorializing her oral ruling. (Opp'n Br. at 9–10.) Petitioner did not object to the request and never objected to the form of Order. (*Id*. at 10.) The Arbitrator signed the order on August 23, 2021. ("OneDrive Dismissal Order", ECF No. 8-2, Ex. 27.)

The parties thereafter agreed upon a briefing schedule for the remaining Windows 10 Claims. (*Id*. at Ex. 26.) The Arbitrator held oral argument on December 1, 2021. (*Id*. at Ex. 31.) On February 8, 2022, the Arbitrator issued an order dismissing the remaining Windows 10 Claims. (Id. at Ex. 32.) On February 10, 2022, the Arbitrator issued a lengthy opinion following the order. (*Id*. at Ex. 33.)

The Arbitrator dismissed Petitioner's Windows 10 claims because (1) the breach of contract claims failed to identify any provision of the governing and enforceable contract (the End-User Licensing Agreement) that Microsoft breached; even if there was a breach, Petitioner is not entitled to any financial recovery under the terms of the agreement; and all warranties expired years before the events at issue, and (2) Petitioner's negligence claim, which mirrored his breach of contract claim, was foreclosed by the economic loss doctrine. (*Id*.)

On May 13, 2022, Petitioner filed the instant Motion seeking vacatur of the Arbitrator's dismissal of his claims. (*See* ECF No. 1.)

## II. LEGAL STANDARD

Within one year after the entry of an arbitration award, "any party to the arbitration may apply to [a district court in the district where the award was made] for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. A court reviews an arbitration award "under an 'extremely deferential standard,' the application of which 'is generally to affirm easily the arbitration award.'" *Hamilton Park Health Care Ctr. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)).

Under the Federal Arbitration Act ("FAA"), an arbitration award is subject to vacatur on four exclusive grounds: (1) "where the award was procured by corruption, fraud, or undue means"; (2) "where there was evident partiality or corruption in the Arbitrators"; (3) "where the Arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "where the Arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

"There is a strong presumption under the FAA in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005). Courts will vacate an award only under the "exceedingly narrow circumstances" listed in 9 U.S.C. § 10(a). *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013). Additionally, a court may refuse to enforce an award that violates law or a "well-defined and dominant" public policy. *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993). "[A] court's refusal to enforce an arbitrator's interpretation of [a] contract[ ] is limited to situations where the

contract as interpreted would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987) (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983) (internal quotation marks omitted)).

The moving party "bears the burden of proving that the arbitration award at issue should be vacated." *Jersey Shore Univ. Med. Ctr. v. Local 5058, Health Prof'ls & Allied Emps.*, Civ. No. 16-4840, 2017 WL 1025180, at *3 (D.N.J. Mar. 16, 2017) (citation omitted).

### III.   DISCUSSION

Petitioner moves to vacate the Arbitrator's dismissal orders on the basis that (1) she manifestly disregarded the law and made gross errors, and (2) she exceeded her powers. (Moving Br. at PageID 2, 5.)

### A.   WHETHER PETITIONER'S FAILURE TO SERVE MICROSOFT WARRANTS DISMISSAL OF THE MOTION TO VACATE

In opposition, Respondent first argues that Petitioner's Motion fails at the outset because he failed to serve Microsoft with a notice of the petition to vacate the arbitration award within the three-month period required by Section 12 of the FAA. (Opp'n Br. at 14.) Respondent contends that Petitioner attempted service upon counsel, rather than service on Microsoft. (*Id.* at 15.) Respondent argues that it did not authorize its counsel to accept service of process on its behalf for any proceeding in district court and therefore, service was not proper. (*Id.*)

In reply, Petitioner argues that he properly served Microsoft. (Reply Br. at 5.) Petitioner contends that he served Microsoft on May 9, 2022 on their outside counsel, who represented Microsoft from "beginning to end in the arbitration proceedings" by way of email. (*Id.*) Petitioner maintains that email service was agreed upon in the arbitration proceedings and that he sent

7

certified mail to counsel the same day. (*Id*.) Petitioner additionally argues that even if service was improper, that the Court should excuse the clerical error on equitable grounds. (*Id*. at 7.)

9 U.S.C. § 12 indicates that a "[n]otice of a motion to vacate, modify, or correct an [arbitration] award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." While courts should grant *pro se* plaintiffs leniency in considering their filings, *pro se* plaintiffs are nevertheless expected to "follow the rules of procedure and the substantive law[.]" *Thompson v. Target Stores*, 501 F. Supp. 2d 601, 603 (D. Del. 2007). Courts are, however, generally "reluctant to dismiss an action where there is a possibility of proper service because dismissal 'needlessly burdens the parties with additional expense and delay and postpones the adjudication of the controversy on its merits.'" *Copia Commc'ns, LLC, v. AM Resorts, L.P.*, 2017 WL 2656184, at *6 (E.D. Pa. June 20, 2017) (citation omitted).

Here, Petitioner, proceeding as *pro se*, served Microsoft's counsel who represented Microsoft during the arbitration proceedings. Petitioner adhered to the service and notice agreement set forth by the parties during their arbitration proceedings. Furthermore, counsel for Microsoft in fact appeared in this action within seven days of the petition's filing. (See ECF No. 4.) Given that the instant matter is directly related to the arbitration proceeding, and *pro se* Petitioner followed the service that was agreed upon in the arbitration proceeding, the Court, in the interests of justice, will not dismiss Petitioner's Motion on this ground. *See Copia Commc'ns, LLC*, 2017 WL 2656184, at *5 (citing 5B Fed. Prac. & Proc. Civ. § 1354 (3d ed.) ("Where a plaintiff acts in good faith, but fails to effect proper service of process, courts are reluctant to dismiss an action."))

### B. WHETHER THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW AND MADE GROSS ERRORS IN DISMISSING PETITIONER'S ONEDRIVE CLAIMS

The Third Circuit has recognized "manifest disregard for the law" as a common law basis for vacatur. *See, e.g., Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012), as amended (Apr. 4, 2012), *aff'd*, 569 U.S. 564 (2013). The manifest disregard standard, however, is an "extremely deferential" one. *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 121 (3d Cir. 2016). If an arbitrator makes "a good faith attempt to [interpret and enforce the contract], even serious errors of law or fact will not subject [the] award to vacatur." *Sutter*, 675 F.3d at 220.

Petitioner argues that the Arbitrator manifestly disregarded settled law by ruling that his motion to compel was moot. (Moving Br. at PageID 2.) Petitioner also took issue with the fact that the Arbitrator believed the law permitted Microsoft "absolute and complete subjective discretion to determine what an objectionable image is to achieve Section 230 immunity." (*Id*.) Petitioner contends that the Arbitrator's denial of his motion to compel Microsoft to produce the alleged single CSEAI image also makes her "guilty of misconduct concerning pertinent and material evidence" because the image is the center of Microsoft's defense. (*Id*.)

Petitioner additionally asserts that in granting Microsoft's motion to dismiss, the Arbitrator claimed she did not have time to write an opinion related to her order. (*Id*. at 3.) Petitioner argues that the proposed order outlining the Arbitrator's decision supplied by Microsoft's counsel was "materially inconsistent with a number of the findings the Arbitrator orally found at the end of oral arguments and included a number of findings that the Arbitrator never addressed or found during her oral findings. (*Id*.) Petitioner maintains that the Arbitrator did not do her own independent review of the caselaw and permitted Microsoft to explicitly misrepresent case law applicability in

her opinion. (*Id*.) Petitioner argues that the Arbitrator failed to verify Microsoft's citations to case law. (*Id*.)

Petitioner next argues that the Arbitrator dismissed claims that were not covered by Section 230 immunity. (*Id*. at 4.) Petitioner maintains that Microsoft explicitly violated the New Jersey Consumer Fraud laws by advertising that "documents are always backed up, always protected." (*Id*.) Petitioner argues that no reasonable arbitrator could possibly find that Section 230 immunity can cover fraudulent advertising. (*Id*.)

Petitioner additionally argues that the Arbitrator failed to address all of his claims. (*Id*.) Specifically, Petitioner asserts that the Arbitrator failed to address his claim that Microsoft terminated his access to his OneDrive account but continued to charge him the monthly fee for the service for almost two years. (*Id*.)

In opposition, Microsoft argues that the Arbitrator's orders were consistent with clearly established law. (Opp'n Br. at 17.) Microsoft asserts that the Arbitrator applied the proper standard and the Section 230 Order was proper, properly denied Petitioner's Motion to Compel disclosure of CSEAI material, properly dismissed Petitioner's consumer protection claim, and addressed all of Petitioner's claims. (*Id*. at 17–28.)

In reply, Petitioner reiterates that the Arbitrator manifestly disregarded the law and made gross errors. (Reply Br. at 8.) Specifically, Petitioner argues in reply that the Arbitrator manifestly disregarded all rules of evidence and basic contract law. (*Id*. at 9, 11.)

To summarize, Petitioner claims the Arbitrator (1) applied an improper Section 230 standard, (2) wrongfully denied Petitioner's motion to compel Microsoft to produce the CSEAI, and (3) failed to conduct an independent review of the case law in using an order drafted by Microsoft. The Court will address each argument in turn.

1. *Whether the Arbitrator Applied the Proper Section 230 Standard*

Petitioner contends that the Arbitrator believed the law permitted Microsoft absolute and complete subjective discretion under Section 230. (Moving Br. at PageID 2.) The Arbitrator, however, did not indicate that Microsoft had absolute and complete subjective discretion under Section 230. Rather, in denying Petitioner's Motion to Compel, the Arbitrator explained that Section 230(c)(2)(A) establishes provider immunity from civil claims for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable . . . ." ("Order Denying Motion to Compel", ECF No. 8-2, Ex. 27 ¶ 2.) The Arbitrator thereafter recognized Congress's intent in enacting Section 230 and that Section 230 has been "interpreted expansively and its purpose is to allow providers to police content without being concerned over the legal ramifications." (*Id*. ¶¶ 3, 4.) The Arbitrator found that Microsoft acted in good faith because it did not act with anticompetitive intent nor single out Petitioner. (*See id*. ¶ 17.) As a result, the Arbitrator concluded that Microsoft's actions fell within the statutory purpose of Section 230, and it is entitled to immunity under the statute. (*Id*. ¶ 11.) Accordingly, the Court rejects Petitioner's argument because the Arbitrator did not apply an "absolute and complete subjective discretion" standard as Petitioner suggests.

2. *Whether the Arbitrator Wrongfully Denied Petitioner's Motion to Compel Decision*

Petitioner next argues that the Arbitrator erred in finding that his Motion to Compel Microsoft to produce the CSEAI image was moot. (Moving Br. at PageID 2.) Petitioner maintains that the Arbitrator's denial of his Motion was predicated on upon her belief that it did not matter whether Microsoft made a mistake in identifying the image as CSEAI. (*Id*.)

Under 47 U.S.C. § 230(c)(2)(A), a party is entitled to immunity for causes of action arising out of its efforts to restrict or block material when the party 1) is a provider or user of an interactive computer service; 2) acted in good faith; and 3) subjectively believed that the material blocked or restricted was a) obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable. *See* 47 U.S.C. § 230(c)(2)(A); *see also Smith v. Trusted Universal Standards In Electronic Transactions, Inc.*, Civ. No. 09-4567, 2010 WL 1799456, at *6 (D.N.J. May 4, 2010) (citing *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 607–08 (N.D. Ill. 2008) (holding § 230(c)(2) involves a subjective determination)). Accordingly, the Arbitrator correctly held that it was Microsoft's subjective determination to restrict, or block petitioner from its platform; whether Microsoft made a mistake is irrelevant to the inquiry as long as Microsoft demonstrated good faith. *See e360Insight, LLC,* 546 F. Supp. 2d at 609 ("a mistaken choice to block, if made in good faith, cannot be the basis for liability under federal or state law.") Compelling Microsoft to produce the image, was therefore moot.

> 3. *Whether the Arbitrator Wrongfully Dismissed Petitioner's OneDrive Claims*

Petitioner next takes issue with the OneDrive Dismissal Order in that the Arbitrator did not independently draft the Order. (Moving Br. at PageID 3.) Following oral argument on Petitioner's OneDrive claims, the Arbitrator issued a lengthy oral ruling. (Opp'n Br. at 22.) Because no court reporter was present, Microsoft offered to propose a draft order for Judge Derman's review memorializing her oral reasoning. (*Id*. at 23.) Petitioner claims the draft was "materially inconsistent with a number of the findings the Arbitrator orally found at the end of oral arguments and included a number of findings that the Arbitrator never addressed or found during her oral findings." (Moving Br. at PageID 3.) Petitioner, however, fails to identify any inconsistent finding.

12

Next, Petitioner asserts that the Arbitrator failed to do her own independent review of the case law cited in the OneDrive Dismissal Order. (Moving Br. at PageID 3.) The Arbitrator found that Petitioner failed to cite any cases addressing the relevant statute. (OneDrive Dismissal Order ¶ 19.) Petitioner claims that he did "specifically cite to numerous cases under Section 230(c)(2), which was argued specifically and clearly in [Petitioner's] written Opposition to the Motion to Dismiss." (Moving Br. at PageID 3.) Petitioner, however, fails to identify any case he cited in such written opposition although he includes his written opposition as an exhibit to his reply brief. (*See* ECF No. 23 at Ex. 9.) A thorough review of Petitioner's opposition brief reveals that he does not, in fact, cite to any cases addressing the relevant statute. Rather, Petitioner argues that Section 230 immunity does not apply because Microsoft is not treated as a publisher or speaker of content provided by another. (*Id*. at PageID 513.) That being said, his argument does align with 42 U.S.C. § 230 (c)(1) which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Here, Microsoft seeks immunity pursuant to 42 U.S.C. § 230(c)(2); it does not argue that it should or should not be treated as the publisher or speaker of any information. Petitioner fails to cite to any relevant case in his opposition brief. Accordingly, the Court finds that the Arbitrator's assertion, that Petitioner failed to cite to any case that addressed the relevant statute, was neither a manifest disregard of the law or a clear error.

Petitioner additionally asserts that there is "new federal case law established since [the] Arbitrator's manifest disregard for existing case law that further supports [Petitioner's] positions." (Moving Br. at PageID 3.) Petitioner, however, fails to cite to any new case law to support this argument. Petitioner, furthermore, did not object to the request and never objected to the form of the OneDrive Dismissal Order. (*See* Shapiro Decl. Ex. 33 at n. 3.) The Arbitrator, writing her

13

own memorandum opinion dismissing Petitioner's Windows 10 claims, indicated she "carefully reviewed and modified the Order submitted by Microsoft." (*See id*.)

Accordingly, the Court finds that the Arbitrator did not manifestly disregard the law or make a clear error in dismissing Petitioner's OneDrive claims.

### C. WHETHER THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW AND MADE GROSS ERRORS IN DISMISSING PETITIONER'S CONSUMER PROTECTION CLAIM

Petitioner next argues that the "core" reason he purchased Microsoft OneDrive's storage was to "avail himself of Microsoft's advertisement to have the security of a cloud back up of his priceless documents, pictures, and data in case his primary computer would fail, as it did when his Microsoft Windows negligently defaulted to a Blue Screen of Death during a required update." (Moving Br. at PageID 4.)

Petitioner claims the Arbitrator erred in dismissing his New Jersey Consumer Fraud claim because "[n]o reasonable arbitrator could possibly find Section 230 immunity can cover fraudulent advertising, as that immunity is only related to the scanning and removal of objectionable images." (*Id*.) Petitioner fails to offer any support for this argument.

The Arbitrator cited to cases where courts have held that Section 230 immunity applies to consumer protection claims. (*See* OneDrive Dismissal Order ¶ 26.) While the Arbitrator's Order dismissing Petitioner's OneDrive Claims does not specify why she dismissed Petitioner's consumer fraud claim, (*see id.*), the Arbitrator indicated that she reviewed the cases cited by the parties. (Shapiro Decl. Ex. 31 at 32:8–12.) Additionally, the OneDrive Dismissal Order specifically indicates that Section 230 provides not only immunity from liability but also immunity from suit. (OneDrive Dismissal Order ¶ 4.)

14

"[A] court reviewing an arbitration award for manifest disregard of the law 'should not vacate an award unless it finds 'both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit and clearly applicable to the case.'" *Caputo v. Wells Fargo Advisors, LLC*, Civ. No. 19-17204, 2020 WL 2786934, at *4 (D.N.J. May 29, 2020) (citations omitted).

The Court finds that here, the Arbitrator reviewed the case law supplied by both parties and determined that Petitioner's Consumer Fraud claim should be dismissed. As already explained, the Arbitrator indicated in her own written Memorandum Decision on Microsoft's Motion to Dismiss that she carefully reviewed the OneDrive Dismissal Order, and Petitioner never objected to the form of Order. (*See* Shapiro Decl. Ex. 33 at n. 3.) Further, there is nothing within her decision that demonstrates she either refused or ignored governing legal principles or ignored well defined law. Rather, she found Microsoft entitled to Section 230 immunity. (*See* OneDrive Dismissal Order ¶ 11.) Accordingly, the Court finds the Arbitrator did not manifestly disregard the law in dismissing Petitioner's consumer fraud claims.

### D. WHETHER THE ARBITRATOR FAILED TO ADDRESS PETITIONER'S KEY CLAIMS

Petitioner argues that the Arbitrator did not address all of his claims. (Moving Br. at PageID 4.) Petitioner asserts that the Arbitrator failed to address his claim that Microsoft continued to charge him the monthly fee for service after Microsoft terminated his access to OneDrive. (*Id.*) Petitioner argues that Microsoft contractually obliged itself to cease collecting recurring payments. (*Id.*) Petitioner asserts that continuing to charge him for services a company is refusing to provide is a violation of New Jersey's Consumer Fraud Law. (*Id.*)

In opposition, Microsoft argues that Petitioner is mistaken and the Arbitratior made it clear that she was dismissing all of Petitioner's claims except Section F of Count 2 and Section E of Count 4.  (Opp'n Br. at 27.)

In reply, Petitioner argues that Microsoft's MSA is clear and unambiguous that Microsoft is 100% responsible for ensuring that Petitioner no longer be charged a monthly fee.  (Reply Br. at 14.)

As previously discussed, the Arbitrator found that Microsoft was entitled to Section 230 immunity, which provides Microsoft immunity from suit. (*See* OneDrive Dismissal Order ¶¶ 4, 11.)  The scope of the Court's review of the Arbitrator's decision, as already stated, is exceedingly narrow.  "A reviewing court may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's interpretation." *Linden Bd. Of Educ. v. Linden Educ. Ass'n*, 202 N.J. 268, 277 (2010) (quoting *N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union*, 187 N.J. 546, 554 (2006)).  While the written award does not clearly indicate the reasons for dismissing the breach of contract claim, it does include and rely upon applicable law to support such dismissal.  Therefore, the Court finds that the award did not fail to address Petitioner's key claims.

E. **WHETHER THE ARBITRATOR EXCEEDED HER POWERS**

Petitioner finally argues that the Arbitrator exceeded her powers when she "sua sponte ordered Microsoft to submit a summary judgment motion related to claims outside of Section 230 immunity." (Moving Br. at PageID 5.)

An enumerated ground to vacate arbitration awards is when "the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).  An arbitrator exceeds his or her power when he or she "decides an issue not submitted to [arbitration], grants relief in a form that cannot be rationally derived from

16

the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." *Sutter,* 675 F.3d at 219–20.

Petitioner contends that the Arbitrator gave him less than a business day to respond to Microsoft's motion to dismiss all claims. (Moving Br. at PageID 5.) Petitioner maintains that "AAA Rule-33 clearly prohibits an arbitrator to sua sponte order a dispositive motion." (*Id*.) Petitioner additionally contends that the Arbitrator also demonstrated partiality to Microsoft as she owned at least $70,000 of Microsoft stock at the outset of the case. (*Id*.)

In opposition, Microsoft claims it did request a dispositive motion on the Windows 10 claims. (Opp'n Br. at 29.) Microsoft contends that it made the request twice and was granted the authority to file dispositive motions as to all claims pursuant to R-33. (*Id*.) Microsoft additionally argues that the AAA offers arbitrators flexibility in conducting the proceedings, citing to *Simons v. Brown*, 444 F. Supp. 3d, 642, 652 (E.D.Pa. 2020), *aff'd,* 2022 WL 296636 (3d Cir. Feb 1, 2022). (*Id*. at 30.) Microsoft maintains that Petitioner has not, and cannot, identify any fundamental unfairness created as a result of moving up briefing dates. (*Id*.) Microsoft further argues that Petitioner did not object to Judge Derman serving as the arbitrator at any point through the arbitration. (*Id*.)

In reply, Petitioner asserts that a "judge absolutely evinces partiality by sua sponte requesting a dispositive motion from a party." (Reply Br. at 17.) Petitioner asserts that if Microsoft sought disposition of the Windows 10 claims, they should have argued as such in the initial Motion for Judgment on the Pleadings. (Id.) Petitioner argues that the AAA rules are "explicitly and incontrovertible on dispositive motions – the arbitrator can only allow their filing by a party, NOT exemplify partiality and request they be filed by a party. (*Id*. at 18.)

The AAA "Rules offer arbitrators flexibility in conducting the proceedings." *Simons,* 444 F. Supp. 3d at 652 (citation omitted). Accordingly, any "procedural error must result in 'fundamental unfairness' to warrant vacatur of arbitration award." *Sherrock Bros. v. DaimlerChrysler Motors Co., LLC*, 260 F. App'x 497, 501 (3d Cir. 2008) (citing *Teamsters Loc. 312 v. Matlack, Inc.*, 118 F.3d 985, 995 (3d Cir. 1997)). Here, Petitioner contends that the Arbitrator exceeded her powers when she "sua sponte ordered Microsoft to submit a summary judgment motion" as to the Windows 10 claims. (Moving Br. at PageID 5.) On May 7, 2021, the Arbitrator entered a Report of Preliminary Hearing and Scheduling Order, which indicated that parties were to file dispositive motions with opening briefs by August 6, 2021. (*See* Shapiro Decl. at Ex. 15.) The Arbitrator thereafter was well within her authority to modify the scheduling order and move up the briefing deadlines. *See Simons*, 444 F. Supp. 3d at 652. Further, such a procedural decision did not result in fundamental unfairness considering both parties were given the expedited briefing return date. Tellingly, the parties consented to the briefing schedule regarding the Windows 10 claims. (*See* ECF No. 8-2 at Ex. 26.)

Furthermore, the Arbitrator's decision to allow for the expedited briefing does not evince partiality nor corruption on her part. The fact that the Arbitrator owned Microsoft stock was disclosed to the parties prior to the initiation of the arbitration proceedings. Petitioner never objected to her serving as the Arbitrator at any point during the proceeding. (*See* ECF No. 8-2 at Ex. 13 ¶ 4 ("Each of the parties, through counsel, confirmed that they consent, and have no objections, to Hon. Harriet Derman, J.S.C., serving as the Arbitrator in this matter.")) "Because he took no action until after he received a negative result, despite having ample opportunity to object previously, he has waived any claim under [the FAA]." *Weber v. PNC Invs.*, 844 F. App'x 579, 583 (3d Cir. 2021) (citing *Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d

144, 148 (3d Cir. 2015) ("[W]here a party is capable of 'thoroughly and systematically digging for dirt on. . .the [] arbitrators,' it should do so prior to being solely motivated by the chance of vacating the award.")).

Accordingly, the Court finds that the Arbitrator did not exceed her powers by implementing an expedited briefing schedule or owning stock in Microsoft.[2]

## IV.  CONCLUSION

For the reasons set forth above, Petitioner's Petition and Motion to Vacate the Arbitration Award will be DENIED.  An appropriate order will follow.

Date: April 17, 2023

s/ Zahid N. Quraishi<br>
**ZAHID N. QURAISHI**<br>
**UNITED STATES DISTRICT JUDGE**

---

[2] While Petitioner appears to raise the Arbitrator's ownership of Microsoft stock as a basis for vacatur under the "exceeding authority" provision of FAA § 10(a), the Court notes that it would be more relevant to the partiality provision of the same section.  Regardless, the parties' express written waiver of this potential conflict defeats Petitioner's argument.